UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

MARIA PAPPAS,

               Plaintiff,

   -against-

NEW YORK CITY BOARD OF EDUCATION, JAMES AMBROSE, Individually and in his Official Capacity as Principal of P.S. 115, DIANE HOBBS, Individually and in her Official Capacity as Principal of P.S. 178, and MARSHA GOLDBERG, Individually and in her Official Capacity as Principal of P.S. 46, and ANITA SAUNDERS, Individually and in her Official Capacity as Superintendent,

               Defendants.

------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 07-CV-4312 (FB) (MDG)

ORIGINAL
D.F
C/M

*Appearances:*
*For the Plaintiff:*
STEVEN A. MORELLI
LORRAINE M. FERRIGNO
Law Offices of Steven A. Morelli, P.C.
1461 Franklin Avenue
Garden City, NY 11530

*For the Defendants:*
MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
By:   DANIEL CHIU
       Assistant Corporation Counsel
100 Church Street, Room 2-170
New York, NY 10007

**BLOCK, Senior District Judge:**

       Maria Pappas ("Pappas"), a fifty-seven year-old Hispanic guidance counselor of Puerto Rican origin, brings this action against the New York City Board of Education ("BOE"), principals James Ambrose, Diane Hobbs, and Marsha Goldberg, individually and in their official capacities, and superintendent Anita Saunders, individually and in her

official capacity (collectively, "defendants"). Pappas alleges age, race and national origin discrimination, retaliation, and a hostile work environment in violation of the Fourteenth Amendment, 42 U.S.C. § 1983 ("§ 1983"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Defendants move for summary judgment on all claims.

Regrettably, this litigation is another all-too-frequent example of a disgruntled employee seeking to wrap employment grievances around the banner of a federal lawsuit without fully appreciating that the federal courts are not a proper forum to litigate employment grievances, regardless of their merit, unless they are grounded on constitutionally or statutorily proscribed discrimination, be it age, religion, race, national origin, gender or disability. Lawyers are expected to understand this and not bring, as here, patently meritless broad-based discrimination claims. Accordingly, for the following reasons, defendants' motion is granted.

I

Race and national origin discrimination claims alleging disparate treatment are cognizable under § 1983, even without concurrent Title VII claims. *See Annis v. County of Westchester*, 36 F.3d 251, 255 (2d Cir. 1994) ("[A]n employment discrimination plaintiff alleging the violation of a constitutional right may bring suit under § 1983 alone, and is not required to plead concurrently a violation of Title VII."). Whether age discrimination claims can be brought under § 1983 alone, or whether those claims are preempted by the Age Discrimination in Employment Act ("ADEA") remains an open question, *see Butts v.*

*New York City Dep't of Hous. Pres. & Dev.*, 307 F. App'x 596, 598 n.1 (2d Cir. 2009) ("We are aware of no opinion of this Court addressing whether the ADEA preempts age discrimination claims based on a violation of the Equal Protection Clause and brought under § 1983."); nonetheless, "'the weight of authority in the Second Circuit favors the position that the ADEA does not preempt claims under § 1983 for age discrimination.'" *See Shapiro v. New York City Dep't of Educ.*, 561 F. Supp. 2d 413, 420 (S.D.N.Y. 2008) (quoting *Donlon v. Bd. of Educ.*, No. 06-CV-6027T, 2007 WL 4553932, at *3 n.1 (W.D.N.Y. Dec. 20, 2007)). Thus, the Court will assume for purposes of deciding this motion that Pappas' age discrimination claim is not preempted by the ADEA.

Discrimination claims alleging a hostile work environment due to racial or national origin animus in violation of the Fourteenth Amendment can also be brought under § 1983. *See Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004). Claims alleging a hostile work environment due to age can be brought under the ADEA, *see, e.g., Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999), but the Court is unaware of any Second Circuit case recognizing an age-based hostile work environment claim brought under § 1983 alone. For purposes of deciding this motion, the Court will assume such a claim is cognizable.

Claims alleging retaliation for engaging in statutorily protected activity can be brought under Title VII and the ADEA. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006). The Court is unaware of any Second Circuit case recognizing a retaliation claim premised on a violation of the Equal Protection Clause,

brought under § 1983, *see Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("[W]e know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination."), and the weight of authority in other circuits does not recognize such a claim. *See, e.g., Teigen v. Renfrow*, 511 F.3d 1072, 1086 (10th Cir. 2007); *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.*, 100 F.3d 1287, 1296 n.8 (7th Cir. 1996). Nevertheless, for purposes of deciding this motion, the Court will also assume that such a claim is cognizable.

II

In ruling upon a motion for summary judgment, the Court "must determine (a) whether there is a 'genuine issue as to any material fact,' and (b) whether, in light of the undisputed facts, 'the movant is entitled to judgment as a matter of law.'" *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotations omitted). Further, "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 129 S.Ct. 2658, 2676 (2009).

**A. Discrimination**

Age, race and national origin discrimination claims based on alleged violations of the Equal Protection Clause—where there is no direct evidence of discrimination—are analyzed using the familiar *McDonnell Douglas* burden-shifting

4

framework,[1] *see Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)):

> [T]he plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action. If such a reason is provided, plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of . . . discrimination.

*Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotations and citations omitted). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'"

---

[1] Although "[m]ost of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of . . . the Equal Protection Clause [brought under § 1983], . . . there are several differences." *Patterson*, 375 F.3d at 225. First, claims under § 1983 do not have to be brought within the 180- or 300-day statute of limitations period applicable to Title VII and ADEA claims. *See id.* Second, whereas in Title VII cases municipalities are liable for the discriminatory acts of their employees, *cf. id* at 221 ("[I]ndividuals are not subject to liability under Title VII."), by contrast "[w]hen the defendant sued for discrimination under . . . § 1983 is a municipality — or an individual sued in his official capacity — the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Id.* (internal citation omitted). Third, although "Title VII claims are not cognizable against individuals, individuals may be held liable under . . . [§] 1983 . . . ." *Id.* "Fourth, although in certain circumstances a Title VII claim may be established through proof of a defendant's mere negligence, without a showing of discriminatory intent, *see, e.g., Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d at 441-42 (employer subject to liability if negligent in responding appropriately to a complaint of racial harassment by co-workers), a plaintiff pursuing a . . . denial of equal protection under § 1983 must show that the discrimination was intentional." *Id.*

5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

### 1. *Prima Facie Case*

To establish a prima facie case, Pappas must show that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. *See Ruiz*, 609 F.3d at 492. Defendants concede that Pappas, as a fifty-seven[2] year-old Hispanic person of Puerto Rican origin, belongs to three protected classes (age, race and national origin) and was qualified for her position, but argue that she has not satisfied the third and fourth elements.

"An adverse employment action is a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (citation, internal quotation marks and alterations omitted).

Pappas alleges a number of adverse employment actions, only two of which arguably constituted a materially adverse change in the terms and conditions of her

---

[2]"The ADEA prohibits discrimination in employment on the basis of age against persons aged 40 or older." *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194 (2d Cir. 2007) (citing 29 U.S.C. §§ 623(a)(1), 631(a)).

employment:³ (1) receiving negative evaluation letters which formed the basis for her reassignment to the Queens Integrated Service Center (the "Queens ISC")⁴ and (2) being subjected to the largest caseload of any guidance counselor in the school district. *See, e.g., Lumhoo v. Home Depot USA*, 229 F. Supp. 2d 121, 150 (E.D.N.Y. 2002) (citing cases finding that negative evaluations may constitute adverse employment actions when accompanied by a decrease in pay or being placed on probation); *Feingold v. New York*, 366 F.3d 138, 153 (2d Cir. 2004) (finding that administrative law judge's heavier docket of cases constituted

---

³Pappas also alleged that: (1) she was yelled at by her superiors; (2) her office was relocated; (3) she was not included in school photos or yearbooks; (4) she did not receive letters of recognition; and (5) she had her responsibility for organizing Pupil Personnel Meetings taken away from her. The first four of these alleged acts clearly do not rise to the level of an adverse employment action. *See Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("[B]eing yelled at . . . do[es] not rise to the level of [an] adverse employment action[] . . . because [it does] not have a material impact on the terms and conditions of Plaintiff's employment."); *Katz v. Beth Israel Md. Ctr.*, No. 95 Civ. 7183 AGS, 2001 WL 11064, at *14 (S.D.N.Y. Jan. 4, 2001) ("Being yelled at[ and] receiving unfair criticism . . . do not rise to the level of adverse employment actions . . . ."); *Cunningham v. New York State Dep't of Labor*, No. 1:05-CV-1127, 2010 WL 1781465, at *6 (N.D.N.Y. Apr. 30, 2010) (determining that relocating office from fifth to first floor office is "trivial" harm, not an adverse employment action); *Scafidi v. Baldwin Union Free School Dist.*, 295 F. Supp. 2d 235, 239-40 (E.D.N.Y. 2003) (finding, in the retaliation context, that plaintiff's exclusion from a yearbook did not "rise to the level of an adverse employment action"). Regardless, the fourth act is refuted by the record, *see* Defs.' Reply Decl. Ex. D, and the fifth act, which occurred in 2003, is barred by the statute of limitations. *See Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004) (holding that the statute of limitations for § 1983 claims involving events arising in New York is three years).

⁴The Queens ISC is one of the infamous "rubber rooms" where "teachers accused of wrongdoing or incompetence . . . show up every school day, sometimes for years, doing no work and drawing full salaries." Jennifer Medina, *Teachers Set Deal With City on Discipline Process*, N.Y. Times, Apr. 15, 2010, at A1. Mayor Michael R. Bloomberg and the New York City teachers' union reached a deal recently to do away with the rubber rooms. *See id.*

an adverse employment action).

Pappas argues that the negative evaluation letters gave rise to an inference of age, race and national origin discrimination because others did not receive negative evaluation letters after engaging in similar conduct. To establish the fourth element of her prima facie case, Pappas must show that she was treated differently than individuals "similarly situated in all material respects." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). Pappas has not, however, identified a single comparator to substantiate her allegations. Thus, Pappas' conclusory allegation that the defendants issued negative evaluation letters to her but not to similarly situated individuals who engaged in the same conduct is insufficient to defeat summary judgment. *See Cameron v. Cmty. Aid For Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) (holding that "[c]onclusory allegations of discrimination, absent any concrete particulars," are insufficient to defeat summary judgment).

Pappas argues that her excessive caseload gave rise to an inference of age, race and national origin discrimination because the defendants had authority to add or remove students and schools from her responsibilities, and no other similarly situated guidance counselor was responsible for as many students who received mandated counseling. Again, to satisfy her prima facie burden Pappas must show that she was treated differently than individuals similarly situated in all material respects, including that her proposed comparators had the same supervisors. *See Shumway*, 118 F.3d at 64 (rejecting plaintiff's proposed comparators because they lacked a common supervisor). Although

she identified other guidance counselors in the school district who had fewer mandated students, there is no evidence that those guidance counselors were supervised by the defendants, nor is there evidence that other guidance counselors had students added or removed from their caseloads. Thus, Pappas' conclusory allegation that the defendants had authority to add or remove students from her caseload, and used that authority in a discriminatory manner, is insufficient to defeat summary judgment.

## 2. *Legitimate Non-Discriminatory Reason and Pretext*

Assuming, *arguendo*, that Pappas established a prima facie case of discrimination for the negative evaluation letters or her excessive caseload, defendants satisfy their burden of offering legitimate, non-discriminatory reasons for both acts. First, defendants argue that Pappas engaged in the misconduct which led to the negative evaluation letters; and second, defendants assert that Pappas' caseload of mandated students was not determined by them, but instead by whether the recommendation of a teacher, consultation with the student's parents, and the results of psychological and educational tests, placed the student within the guidelines of the Individuals with Disabilities Education Act ("IDEA"). *See* 28 U.S.C. §§ 1400 *et seq.*

Thus, it was Pappas' burden to show that the defendants, despite their asserted non-discriminatory reasons, were "motivated at least in part by the prohibited discriminatory animus." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156 (2d Cir. 2010). To that end, Pappas' attorney argued at oral argument that one disciplinary letter was issued because Pappas failed to immediately report an incident of possible corporal punishment,

and other teachers and administrators who witnessed and did not report the incident were not issued disciplinary letters. This is not evidence of discriminatory animus, however, because Pappas did not receive the letter for failing to report the incident; rather, she received the letter for waiting two days before reporting the incident. This being the only evidence of the defendants' discriminatory animus offered by Pappas, the defendants are entitled to summary judgment. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) (explaining that defendant entitled to prevail "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination").

## B. Retaliation

### 1. *Prima Facie Case*

Pappas' retaliation claim is subject to the same *McDonnell Douglas* burden-shifting framework applicable to discrimination claims. *See Terry v. Ashcroft*, 336 F.3d 128, 140-41 (2d Cir. 2003). To establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) that she engaged in a statutorily protected activity; (2) that her employer was aware of this activity; (3) that she suffered an adverse employment action; and (4) a "causal connection" between the protected activity and the adverse employment action. *See Kessler v. Westchester Country Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).

For purposes of deciding this motion, the Court assumes that Pappas has made out a prima facie case of retaliation. Pappas wrote in a letter responding to a disciplinary letter she received in June 2007 that she was "being singled out" and "discriminated against" because she was Puerto Rican, *see* Pl.'s Ex. I, her employer was

aware of that complaint, she was reassigned to the Queens ISC in September 2007, and the temporal proximity between her letter and her reassignment is close enough to infer causation. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (affirming district court's finding of causal connection because the alleged retaliatory act occurred "less than two months after [plaintiff] filed a complaint").

## 2. *Legitimate, Non-Retaliatory Reason and Pretext*

Defendants satisfy their burden of putting forth a legitimate, non-retaliatory reason for reassigning Pappas to the Queens ISC: her misconduct, memorialized in the negative evaluation letters, was the basis for her reassignment.

In her effort to show that she was reassigned due to the defendants' retaliatory animus despite their proffered non-retaliatory reason, Pappas argues that each issuance of a negative evaluation letter was motivated by discriminatory animus. Since the Court has determined that these letters were not motivated by discrimination, Pappas has not satisfied her burden of showing that retaliation played a part in her reassignment.

## C. Hostile Work Environment

To establish a prima facie hostile work environment case, a plaintiff must provide sufficient evidence to show misconduct "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). "A plaintiff must also demonstrate that she was subjected to the hostility because of her membership in a protected class." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 241

(2d Cir. 2007).

Pappas bases her hostile work environment claim on the same acts she alleged were adverse employment actions in her discrimination claim. Even assuming, *arguendo*, that those acts created a hostile or abusive work environment, "[e]veryone can be characterized by . . . race, ethnicity, or [age]; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). Pappas has simply not provided evidence that the defendants were motivated by discriminatory animus.

### D. Pappas' Due Process Claim

Pappas alleges that she was deprived of due process when she was reassigned to the Queens ISC without the opportunity to "clear her name or restore her to her position." Am. Compl. ¶¶ 161–62. The defendants correctly argue that Pappas was not deprived of a property interest when she was assigned to the Queens ISC because she continued to draw a full salary. *See O'Connor v. Pierson*, 426 F.3d 187, 199 (2d Cir. 2005) ("[N]o court has held that an employee on fully paid leave has been deprived of a property right merely by virtue of being relieved of his job duties."). Moreover, she received notice of the charges against her when she was reassigned to the Queens ISC, and was entitled to an opportunity to challenge the charges against her in accordance with New York law. *See* N.Y. Educ. Law § 3020-a; *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (finding due process requirements satisfied where teacher received "oral or written notice

of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her] side of the story").

E. Pappas' *Monell* Claim

Pappas alleges that her Fourteenth Amendment rights were violated by the BOE, and by the individual defendants acting in their official capacities. "[W]hen the defendant sued for discrimination under . . . § 1983 is a municipality—or an individual sued in his official capacity—the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (internal citation omitted) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

> To show a policy, custom, or practice, the plaintiff need not identify an express rule or regulation. It is sufficient to show, for example, that a discriminatory practice of municipal officials was so persistent or widespread as to constitute a custom or usage with the force of law, or that a discriminatory practice of subordinate employees was so manifest as to imply the constructive acquiescence of senior policy-making officials. A policy, custom, or practice may also be inferred where the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction.

*Patterson*, 375 F.3d at 226 (internal citations and quotations omitted).

Pappas argues that "certain individuals made comments to the effect that they have to ban [sic] together to get rid of plaintiff or that they were acting in concert to do so"; and that "the persistent and sometimes concerted action among supervisory policy making employees is enough to establish an unwritten policy of discrimination in the DOE

13

that is so persistent and widespread as to be analogous to a formal policy." Pl.'s Mem. of Law at 18. Pappas supports her assertion of concerted action by citing to five paragraphs of her Rule 56.1 statement, none of which supports her claim. Moreover, Pappas provides no evidence that DOE has a custom or policy of discriminating against Hispanic people over the age of forty, nor is there any evidence of the individual defendants discriminating against other individuals because of their race, national origin or age. Accordingly, the defendants are entitled to summary judgment on Pappas' *Monell* claim.

## F. State-law Claims

"In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity[.]" *Klein & Co. Futures, Inc. v. Board of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). Pappas' claims brought under the NYSHRL and the NYCHRL are analyzed under the same standards as claims brought under federal law. *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (discrimination); *Kassner*, 496 F.3d at 237–38 (retaliation); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 316–17, 317 n.2 (2d Cir. 1999) (hostile work environment). Where, as here, state and federal law claims are governed by the same standards, judicial economy is best served by exercising supplemental jurisdiction. *See Chambers v. Capital Cities/ABC*, 851 F. Supp. 543, 545 (S.D.N.Y. 1994) ("Duplicative litigation at multiple levels of government involving the same facts [is] contrary to the objectives of the Supplemental Jurisdiction Act and the public interest."). Accordingly, the Court exercises supplemental jurisdiction over Pappas' state and city law claims, and grants summary judgment for the

same reasons set forth above.

## CONCLUSION

Defendants' motion for summary judgment is granted in its entirety.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 13, 2011